**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| RADLEY JEROME BRADFORD, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>TMII ENTERPRISES, LLC D/B/A A1 GARAGE DOOR DOCTOR<br><br>               Defendant. | No. 4:26-cv-2839 |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Introduction**.................................................................................................................. 5

**Background** ................................................................................................................... 5

**Argument** ...................................................................................................................... 6

   **I.  The TCPA's plain text protects residential subscribers—including those using cellular telephone service.**........................................................................................................ 6

     A. Section 227(c) Focuses on the Subscriber, Not the Telephone. ....................................... 7

     B. "Residential" Describes How the Telephone Is Used, Not Whether It Is Wired or Wireless. .................................................................................................................. 8

     C. The FCC and the Overwhelming Weight of Authority Confirm That Residential Cellular Telephone Subscribers Are Protected........................................................................ 10

     D. Texas Courts Have Consistently Rejected Defendant's Interpretation. ........................... 16

   **II. The Plaintiff Sufficiently Alleges His Cellular Telephone Is a Residential Line.**.......... 19

**Conclusion** .................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Abboud v. Lotta Dough, LLC*,
  No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547 (W.D. Tex. Feb. 27, 2025) ............ 15

*Barton v. Temescal Wellness, LLC*,
  525 F. Supp. 3d 195, 202 (D. Mass. 2021) ............................................................... 21

*Bilek v. Fed. Ins. Co.*,
  No. 21 C 1651, 2022 U.S. Dist. LEXIS 170246 (N.D. Ill. Sept. 12, 2022).............................. 21

*Black v. Ideal Concepts, Inc.*,
  2025 U.S. Dist. LEXIS 76417 (W.D. Tex. Apr. 21, 2025)....................................................... 15

*Cacho v. McCarthy & Kelly, LLP*,
  739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024)............................................. 8, 9, 10, 11, 13

*Chennette v. Porch.com*,
  50 F.4th 1217, 1223–1225 (9th Cir. 2022) ........................................................................ 8

*Clemens v. Consumer Sol. Ctr.*,
  No. 1:21-cv-1002 (RDA/LRV), 2025 WL 2604494 (E.D. Va. July 14, 2025) ....................... 15

*Cranor v. 5 Star Nutrition, L.L.C.*,
  998 F.3d 686, 691 (5th Cir. 2021) ..................................................................................... 18

*Cunningham v. Britereal Mgmt., Inc.*,
  2020 U.S. Dist. LEXIS 236135 ......................................................................................... 17

*Cunningham v. Foresters Fin. Servs.*,
  300 F. Supp. 3d 1004, 1018 (N.D. Ind. 2018) ....................................................................... 21

*Cunningham v. Politi*,
  2019 U.S. Dist. LEXIS 102545 ......................................................................................... 16

*Duron v. Kings Cap. Holding LLC*,
  No. EP-25-CV-00176-KC, 2026 U.S. Dist. LEXIS 6340 (W.D. Tex. Jan. 14, 2026)........ 18, 19

*Escano v. RCI LLC*,
  No. CV 22-360 DHU/GJF, 2022 WL 17251273 (D.N.M. Nov. 28, 2022) .............................. 21

*Ferrell v. Colourpop Cosmetics, LLC*,
  No. 2:25-cv-01324, 2025 U.S. Dist. LEXIS 140893 (C.D. Cal. July 22, 2025)........................ 15

*Gill v. Align Tech. Inc.*,
  No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464 (E.D. Wis. May 16, 2022) ..................... 21

*Guadian v. United Tax Def. LLC*,
  No. EP-23-CV-00349-KC, 2024 U.S. Dist. LEXIS 6572 (W.D. Tex. Jan. 12, 2024).............. 19

*Harriel v. Bealls, Inc.*,
  No. 8:25-cv-1165, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025).......................................... 13

*Hirsch v. USHealth Advisors, LLC*,
  337 F.R.D. 118, 131 (N.D. Tex. 2020) .................................................................. 17, 18, 19

*Horton v. MultiPlan Inc.*,
  No. 4:23-cv-03636, 2024 U.S. Dist. LEXIS 123050 (S.D. Tex. July 2, 2024) .................. 18, 19
*Hudson v. Palm Beach Tan, Inc.*,
  No. 1:23CV486(WO)(JEP), 2024 WL 4190513 (M.D.N.C. Aug. 12, 2024) .......................... 16
*Hunsinger v. Alpha Cash Buyers LLC*,
  No. 3:21-CV-2198-D, 2022 U.S. Dist. LEXIS 32319 (N.D. Tex. Feb. 24, 2022) ....... 17, 18, 19
*Isaacs v. USHealth Advisors, LLC*,
  No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625 (N.D. Ga. Aug. 7, 2025) ....... 10, 15
*Jackson v. Direct Bldg. Supplies LLC*,
  No. 4:23-CV-01569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024)..................................... 10, 13
*Johnson v. Palmer Admin. Servs., Inc.*,
  No. 6:22-CV-00121-JCB-KNM, 2022 U.S. Dist. LEXIS 207008 (E.D. Tex. Oct. 20, 2022) . 17
*Krakauer v. Dish Network, LLC*,
  925 F.3d at 663 ............................................................................................ 16, 19, 20
*Lirones v. Leaf Home Water Sols., LLC*,
  No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900 (N.D. Ohio Sept. 16, 2024) ............. 10, 13
*Long v. Cat Exteriors*,
  No. SA-22-CV-00923-JKP, 2022 WL 17744052 (W.D. Tex. Dec. 15, 2022)........................ 21
*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)................................................................................................ 12, 13
*Loudermilk v. Maelys Cosmetics USA, Inc.*,
  2025 U.S. Dist. LEXIS 256097 (N.D. Ga. Dec. 10, 2025)....................................................... 15
*Lyman v. QuinStreet, Inc.*,
  No. 23-cv-5056, 2024 WL 3406992 (N.D. Cal. July 12, 2024) ....................................... 11, 13
*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  145 S. Ct. 2006 (2025)....................................................................................... 8, 12, 14
*Myrick v. Adapthealth, LLC*,
  No. 6:22-CV-00484-JDK, 2023 WL 5162396 (E.D. Tex. June 26, 2023).............................. 16
*New Prime Inc. v. Oliveira*,
  586 U.S. 105, 113 (2019)............................................................................................ 8
*Newman v. SGMS, Inc.*,
  No. 3:25-CV-0042-KDB-SCR, 2025 WL 2524131 (W.D.N.C. Sept. 2, 2025) ...................... 15
*Pfizer, Inc. v. Gov't of India*,
  434 U.S. 308, 312 (1978)........................................................................................... 9
*Powers v. One Techs., LLC*,
  No. 3:21-CV-2285-X, 2022 U.S. Dist. LEXIS 134034 (N.D. Tex. July 28, 2022).................. 18
*Riley v. California*,
  573 U.S. 373, 385 (2014)........................................................................................ 20
*Skidmore v. Swift & Co.*,
  323 U.S. 134, 139–40 (1944)................................................................................... 13

3

*Suriano v. French Riviera Health Spa, Inc.*,
 No. 18-9141, 2018 U.S. Dist. LEXIS 216018 (E.D. La. Dec. 20, 2018)................................. 19

*Wilson v. Hard Eight Nutrition LLC*,
 No. 6:25-cv-00144-AA, 2025 U.S. Dist. LEXIS 122504 (D. Or. June 27, 2025)............... 9, 15

## Statutes

47 U.S.C. § 227................................................................ 6, 8, 9, 10, 11, 12, 16, 17
47 U.S.C. § 332(c)(1)(A) ............................................................................. 12
Tex. Bus. & Com. Code § 305.001 et seq. .................................................................. 6

## Regulations

16 C.F.R. § 310.4(b) ............................................................................. 12
47 C.F.R. § 20.15(a).............................................................................. 12
47 C.F.R. § 64.1200(d) .......................................................................... 17
47 C.F.R. § 64.1200(e).......................................................................... 8
47 C.F.R. § 64.2305(d) .......................................................................... 10

## Other Authorities

Black's Law Dictionary (6th ed. 1991)............................................................ 9
Daniel T. Deacon, Administrative Forbearance, 125 Yale L.J. 1548 (2016) ................................ 12
Implementation of Sections 3(n) and 332 of the Communications Act Regarding Regulatory
 Treatment of Mobile Services, 59 Fed. Reg. 18,493 (1994)........................................ 12
In re Rules and Regulations Implementing the TCPA, 18 FCC Rcd. 14014 (2003)................ 8, 12
Junk Fax Prevention Act of 2005, Pub. L. No. 109–21, 119 Stat. 359......................................... 10
Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, 107 Stat. 312....................... 12
Pub. L. No. 102–243, 105 Stat. 2394, § 2........................................................................ 10
Pub. L. No. 108–10, § 3 ....................................................................... 12
S. Rep. No. 102-178 (1991) ....................................................................... 19
Webster's College Dictionary (1991) .......................................................... 8
Webster's Ninth New Collegiate Dictionary ...................................................... 15
14 F.C.C. Rcd. 15550 (1999).......................................................................... 10

4

**INTRODUCTION**

Defendant TMII Enterprises, LLC D/B/A A1 Garage Door Doctor ("Garage Door Doctor") asks this Court to dismiss a case arising from a straightforward allegation: it initiated telemarketing solicitations to Plaintiff Radley Jerome Bradford cellular telephone number even though that number was registered on the National Do Not Call Registry. The motion should be denied.

Garage Door Doctor's lead argument rests on a cramped and outdated reading of the Telephone Consumer Protection Act ("TCPA"). The statute's National Do Not Call Registry provisions protect "residential telephone subscribers," not merely "residential telephone lines." 47 U.S.C. § 227(c). That subscriber-focused language naturally encompasses individuals who use cellular telephone service for residential, personal, or household purposes—exactly as Mr. Bradford alleges here. Courts across the country, have overwhelmingly reached the same conclusion: cellular telephone subscribers can qualify as "residential telephone subscribers" under § 227(c), and Defendant's contrary position cannot be reconciled with the statute's text, structure, or purpose.

Because Plaintiff has plausibly alleged violations of both federal and Texas law—and because this District is a proper and constitutionally reasonable forum—Garage Door Doctor's motion should be denied in full.

**BACKGROUND**

Plaintiff brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and the Texas Telephone Solicitation Act ("Texas Act"), Tex. Bus. & Com. Code § 305.001 et seq., challenging Defendant's repeated telemarketing text messages

despite Plaintiff's registration on the National Do-Not-Call Registry and his subsequent request that Defendant stop contacting him. ECF No. 6 ¶¶ 1-6.

Plaintiff has maintained his cellular telephone number on the National Do-Not-Call Registry since March 31, 2019. *Id.* ¶ 37. He uses that cellular telephone exclusively for personal, residential, and household purposes, pays all bills associated with the number himself, receives no business reimbursement for the number, and does not maintain a separate residential landline. *Id.* ¶¶ 38-41.

Beginning on September 25, 2025, Defendant sent Plaintiff a telemarketing text message promoting its garage door services and referral program. ECF No. 6 ¶¶ 43-44. Plaintiff immediately replied "opt out" in an effort to stop future solicitations. *Id.* ¶ 45. Despite that request, Defendant transmitted three additional substantially identical telemarketing text messages on October 17, 2025, December 2, 2025, and January 16, 2026. *Id.* ¶¶ 46-52.

The Complaint alleges that these messages were part of a broader telemarketing campaign designed to generate customers and revenue for Defendant's garage door repair and installation business. ECF No. 6 ¶¶ 49-58. Plaintiff accordingly asserts claims under the TCPA's National Do-Not-Call regulations, the TCPA's internal do-not-call regulations, and the Texas Telephone Solicitation Act on behalf of himself and similarly situated consumers. *Id.* ¶¶ 59-95.

**ARGUMENT**

I.      **The TCPA's plain text protects residential subscribers—including those
        <u>using cellular telephone service</u>**

Defendant asks this Court to adopt an unprecedented rule that millions of Americans who use their cellular telephones as their sole residential telephone have no protection under the TCPA's National Do Not Call provisions. The statute's text, the FCC's longstanding

6

interpretation, and the overwhelming weight of recent authority—including every court to consider the issue following *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025)—reject that position. Plaintiff has also expressly alleged that his cellular telephone is used for personal, residential, and household purposes. Accepting those allegations as true, the Complaint easily states a claim for relief.

### A.  Section 227(c) Focuses on the Subscriber, Not the Telephone.

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As both the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–1225 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases).

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term in the TCPA. *Id.* § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes, subject to certain exceptions. *Id.* Solicitations to cell phones fit that definition. First, to state the obvious, a cell phone is a "telephone." *See, e.g.*, 47 U.S.C. §§ 227(b)(1)(A)(iii) (using the phrase "cellular telephone"). Congress's use of the word "transmitted" also conveys no preference: "Transmit" means "to send a signal *by radio waves or by wire*." Transmit, Webster's College Dictionary (1991) (emphasis added). And Congress's use of the word "message" also

7

suggests that Congress had no particular technology in mind: "Message" means "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*, from one person to another." Black's Law Dictionary, 6th Ed. (1991) (emphasis added). Finally, "any person" has a "naturally broad and inclusive meaning." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978).

Next, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion. Congress knew how to draft technology-specific restrictions—it did so elsewhere in the TCPA by regulating particular types of telephone "lines" and services. See, e.g., 47 U.S.C. § 227(b)(1)(A)(iii) (calls to "cellular telephone service"); id. § 227(b)(1)(B) (calls to a "residential telephone line"). But § 227(c) is not written in terms of "lines." It protects "residential telephone subscribers," a subscriber-focused phrase that turns on whether the subscriber uses the service for residential (i.e., personal and household) purposes—not on whether the service happens to be wired or wireless.

For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So, a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*; *Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025). Garage Door Doctor's contrary reading would rewrite § 227(c) to say "residential telephone lines," but Congress chose "residential telephone subscribers" instead—and courts must give effect to that choice.

## B.  "Residential" Describes How the Telephone Is Used, Not Whether It Is Wired or Wireless.

That leaves the word "residential," which Defendant's argument hinges on. But that word doesn't exclude cell phone subscribers, either. As used in the TCPA "residential" is just the

opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So the word "residential" refers to the purposes for which a phone is used, not its physical characteristics or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024). Many cell phone subscribers, including Mr. Bradford, fit that description. As alleged, Mr. Bradford uses her number for personal, residential, and household purposes—exactly the kind of everyday home-line use the statute protects.

The TCPA's text and FCC regulations establish that meaning of the word "residential." That's how Congress used the word "residential" in the TCPA's statutory findings, which noted that "businesses actively telemarket goods and services to *business and residential* customers." Pub. L. No. 102–243, 105 Stat. 2394, § 2 (emphasis added).[1] The current text of the TCPA, as amended in 2005, also contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A).[2] And FCC regulations dating back to the 1990s explicitly define "residential subscriber" to mean "a subscriber … *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added); *see* 14 F.C.C. Rcd. 15550, 15692 (1999).

---

[1] Other findings similarly contrast "home" to contrast with "business": Congress found that telemarketing to "the home and other businesses" was widespread, and that automated and recorded calls "to businesses as well as to the home" needed to be curtailed. Pub. L. No. 102–243, 105 Stat. 2394, § 2.

[2] *See* Junk Fax Prevention Act of 2005, Pub. L. No. 109–21, 119 Stat. 359, § 2.

That meaning of "residential" also aligns with the "express aim" of the Do Not Call List: to protect residential subscribers' "'privacy rights.'" *Wilson*, 2025 WL 1784815, at \*6 (quoting 47 U.S.C. § 227(c)(1), (2)). That shows that "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at \*4 (N.D. Cal. July 12, 2024). That is especially true today, when many households use a cellular number as their only home phone—and Congress did not tether privacy protections to a disappearing technology.

**C.  The FCC and the Overwhelming Weight of Authority Confirm That Residential Cellular Telephone Subscribers Are Protected.**

Broader statutory context makes Congress's intent even clearer. As cell phones grew more prevalent between the TCPA's enactment in 1991 the FCC's establishment of the Do Not Call List in 2003, Congress legislated several times to clarify the status of cell phones under the TCPA, making clearer and clearer that it wanted them to be protected. Nor does Congress's decision to expressly reference "cellular telephone service" in § 227(b), but not in § 227(c), support Defendant's negative-implication argument. Section 227(c) is enabling text: it directs the FCC to "initiate a rulemaking proceeding" and to establish a national do-not-call database through regulations. 47 U.S.C. § 227(c)(1), (3). When Congress enacted § 227(c)(5), the National Do Not Call Registry did not yet exist, and Congress deliberately left the operational details—including which numbers would be eligible for the registry—to the FCC's implementing rules. In that context, Congress had no reason to **specify** particular telephone technologies in § 227(c), because the section was written to operate through future rulemaking rather than by enumerating device categories in the statute itself.

10

In 2003, Congress directed the FCC to establish the national registry and to maximize consistency with the FTC's rules, which apply to any "telephone number," including wireless numbers. Pub. L. No. 108–10, § 3; 16 C.F.R. § 310.4(b). Consistent with that directive, the FCC has permitted wireless subscribers to register since the registry's inception. And in the 2003 order that established the Do Not Call List regulations, the FCC determined that "wireless subscribers" were eligible for protection. *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶ 33 (2003).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lirones*, 2024 WL 4198134, at *7; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This court should do the same. In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

Even ignoring the FCC's interpretations, all of the "district courts that have considered this issue post-*Loper* [*Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)] have reached the same conclusion: cellular telephone users can be considered 'residential telephone subscribers' under § 227(c). *See Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 2024

11

U.S. Dist. LEXIS 117544, 2024 WL 3293628, at *9 (S.D.N.Y. July 3, 2024) ('The Court therefore rejects Defendant's contention that Plaintiff falls outside the TCPA's protective ambit merely because he received the challenged calls on his cellphone.'); *Lyman v. Quinstreet, Inc.*, No. 23-CV-05056-PCP, 2024 U.S. Dist. LEXIS 123132, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ('the statutory text does not support [Defendant's] position, and instead is best read to include at least some cellular phone subscribers within the category of *residential telephone subscribers*')." *See Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900, at *14-19 (N.D. Ohio Sep. 16, 2024). This is because the TCPA's National Do Not Call Registry provision "provides protections to a certain type of phone user, regardless of the technology." *Id.* at *14; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024) ("The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So instead of describing a 'subscriber' who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.").

"The inclusion of the term 'cellular telephone' in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s protections; 'Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a *residential telephone **line***, as Congress used that term in the preceding subsection.'" *Id*.

12

Indeed, every court to address this issue after the Supreme Court's ruling in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), has reached the exact same conclusion—that cellular telephone numbers are protected under the TCPA's National Do Not Call Registry provision:

> Defendant's interpretation of a residential subscriber ignores the fact that "residential" modifies "subscriber," meaning that the definition is tethered to a type of person rather than a type of technology. And although Defendant points out that Congress has occasionally used the term "cellular telephone service" and could have done so here if it intended for the TCPA to cover cell phones, Defendant overlooks the fact that Congress has also used the term "residential telephone line" elsewhere in the TCPA. Put differently, Congress has sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular type of subscriber. Thus, Defendant's argument is misplaced.
>
> Further, while not determinative, the Court also notes that Plaintiff's interpretation of "residential subscriber" comports with the overall purpose of the TCPA…Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same. Defendant's interpretation of the TCPA would yield strange results, protecting the privacy interests of a landline subscriber but not a cell phone subscriber—even when the cell phone is the sole phone for home use, as is increasingly the case. In other words, Defendant's interpretation would tie residential privacy interests to an obsolete and disappearing phone technology.

*Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *7-9 (N.D. Ga. Aug. 7, 2025) (cleaned up); *Ferrell v. Colourpop Cosmetics, LLC*, No. 2:25-cv-01324, 2025 U.S. Dist. LEXIS 140893, at *16-17 (C.D. Cal. July 22, 2025) ("In 1991, when the TCPA was enacted, Webster's Dictionary defined 'residential' as 'used as a residence or by residents.' *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *5 (D. Or. June 27, 2025) (quoting Residential, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY).

Ultimately, as one Court put it addressing a similar motion: "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta*

13

*Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, \*3 (W.D. Tex. Feb. 27, 2025); *Newman v. SGMS, Inc.*, No. 3:25-CV-0042-KDB-SCR, 2025 WL 2524131 (W.D.N.C. Sept. 2, 2025) and *Clemens v. Consumer Sol. Ctr., et al.*, No. 1:21-cv-1002 (RDA/LRV), 2025 WL 2604494 (E.D. Va. July 14, 2025), *report and recommendation adopted*, No. 1:21-cv-1002 (RDA/LRV), 2025 WL 2427685 (E.D. Va. Aug. 22, 2025); *Loudermilk v. Maelys Cosmetics USA, Inc.,* 2025 U.S. Dist. LEXIS 256097, \*7-8 (N.D. Ga. December 10, 2025). This Court can—and should—follow suit.

The cases Defendant cites do not support a different conclusion. Defendant cites *Gaker v. Q3M Ins. Sols.* but omits critical context: *Gaker* was "an unresolved magistrate recommendation." *See Black v. Ideal Concepts, Inc.,* 2025 U.S. Dist. LEXIS 76417 \*4 (W.D. Tex. April 21, 2025) (denying motion to dismiss and criticizing *Gaker*). And *Gaker* has been subsequently distinguished by other North Carolina federal courts, including in *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at \*3-4 (M.D.N.C. Aug. 12, 2024), report and recommendation adopted, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024) where the Court distinguished *Gaker* on at least three counts:

> First, the vast majority of recent cases that have considered this issue, in this Circuit and others, have found that a cell phone may plausibly be alleged in a complaint to be residential, and thus covered by the TCPA. (citing multiple cases). . . . Second, in *Krakauer v. Dish Network, LLC*, a prior TCPA class action in this district that proceeded to final judgment following a jury trial, the certified class included . . . both landline and cellular telephone numbers. . . . Third, this approach is consistent with the applicable regulatory provisions and FCC interpretation. In this regard, the statutory language of 47 U.S.C. § 227 does not explicitly preclude a cell phone from being considered a "residential telephone." . . . The handful of cases cited by Defendant reaching a contrary result do not provide a sufficient basis to reject the weight of authority, the prior decision of this Court in *Krakauer*, and the analysis of the FCC as reflected in the applicable regulations, to conclude that a cell phone can never be a residential telephone, as Defendant contends. Therefore, Defendant's Motion to Dismiss on the basis that a cell phone cannot be a residential telephone should be denied.

14

*Gaker* also relied heavily on the fact that cellular telephones were mentioned explicitly elsewhere in the TCPA but not in the language of 227(c)(5), same as the above. However, this does not pose a textual problem for the Plaintiff. The text of 227(c)(5) was drafted and enacted *prior to* the creation of the National Do Not Call Registry or its implementing regulations. As such, Congress saw no need to include in the statutory text what it wrote would be subject to future rulemaking. Indeed, if Congress had desired to influence or guide such rulemaking, it would have included such provisions in the enabling text.

The Cunningham cases fail for the same reason. In all cases, the same serial *pro se* plaintiff failed to plead that his cellphone served as a residential line. In *Cunningham v. Politi*, 2019 U.S. Dist. LEXIS 102545, a serial *pro se* plaintiff failed to plead that his cellphone functioned as a residential line. *See Myrick v. Adapthealth, LLC,* No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *3 (E.D. Tex. June 26, 2023) ("Plaintiffs allegations regarding his cellular phone qualifying him as a residential telephone subscriber distinguish this case from the line of Cunningham cases cited by Defendants."). Additionally, *Politi* has been criticized by other courts and labeled "contrary to common sense." *See, e.g., Hirsch v. USHealth Advisors, LLC,* 337 F.R.D. 118, 131 (N.D. Tex. 2020). *Cunningham v. Britereal Mgmt., Inc.*, which involved the same plaintiff, is also an outlier. Plaintiff's claims were dismissed without much analysis. The only case *Britereal* cites in support of its holding is *Politi*, which is problematic as a result. 2020 U.S. Dist. LEXIS 236135, at *16.

Defendant's reliance on *Johnson v. Palmer Administrative Services, Inc.*, No. 6:22-CV-00121-JCB-KNM, 2022 U.S. Dist. LEXIS 207008 (E.D. Tex. Oct. 20, 2022) is similarly misplaced. *Johnson* did not hold that cellular telephones categorically fall outside the protection of 47 U.S.C. § 227(c) or 47 C.F.R. § 64.1200(d). To the contrary, the Court expressly recognized that "other courts in the Fifth Circuit have determined that calls to a cell phone may be construed

15

as being made to residential subscribers," citing *Hunsinger*, *Powers*, *Callier*, and *Hirsch*, and further acknowledged the FCC's 2003 Order, which "stated that it would presume that wireless numbers registered on the national do-not-call registry were residential numbers" and that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *Id.* Instead, the Court proceeded to hold only that the plaintiff had failed to plead that his cellphone was used as a residential phone because he "pled no facts pertaining to how his cellular phone was used." Thus, *Johnson*, like the series of Cunningham cases, is properly understood as a pleading case turning on the plaintiff's failure to allege residential use of his cellular telephone—not as holding that cellular telephones can never qualify as residential telephone subscribers under the TCPA. Here, by contrast, Plaintiff specifically alleges that his cellular telephone is used for personal, residential, and household purposes.

### D. Texas Courts Have Consistently Rejected Defendant's Interpretation.

Texas federal courts have consistently rejected Defendant's argument that a cellular telephone can never qualify as a "residential telephone subscriber" under the TCPA's National Do Not Call provisions. In *Horton v. MultiPlan Inc.*, No. 4:23-cv-03636, 2024 U.S. Dist. LEXIS 123050, at *20-21 (S.D. Tex. July 2, 2024), Judge Rutherford recognized that courts within Texas have repeatedly held that a cellular telephone may qualify as residential where the plaintiff alleges it is used for residential purposes. In reaching that conclusion, the Court relied on *Hunsinger v. Alpha Cash Buyers LLC*, No. 3:21-CV-2198-D, 2022 U.S. Dist. LEXIS 32319, at *5-7 (N.D. Tex. Feb. 24, 2022), *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020), *Powers v. One Technologies, LLC*, No. 3:21-CV-2285-X, 2022 U.S. Dist. LEXIS 134034, at *5-7 (N.D. Tex. July 28, 2022), and the FCC's 2003 TCPA Order before concluding that allegations the plaintiff owned a "residential cellphone number" registered on the National Do Not Call Registry

16

sufficiently alleged residential subscriber status at the pleading stage. *Horton*, 2024 U.S. Dist. LEXIS 123050, at \*20-21.

Nor does Fifth Circuit precedent support Defendant's proposed categorical rule. To the contrary, the Fifth Circuit has recognized that the TCPA "cannot be read to regulate unsolicited telemarketing only when it affects the home," explaining that Congress sought to remedy nuisance and invasions of privacy "in a broader set of circumstances." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 691 (5th Cir. 2021). Consistent with *Cranor*, the *Horton* court observed that the Fifth Circuit has recognized that cellular telephones may qualify as "residential" for TCPA purposes even though it has not yet directly addressed the meaning of "residential telephone subscriber" under § 227(c). *Horton*, 2024 U.S. Dist. LEXIS 123050, at \*7.

More recently, Texas district courts have continued to apply the same rule. *See Duron v. Kings Cap. Holding LLC*, No. EP-25-CV-00176-KC, 2026 U.S. Dist. LEXIS 6340, at \*10 (W.D. Tex. Jan. 14, 2026) (recognizing that courts have held a cellular telephone may qualify as residential where the plaintiff alleges residential use); *Guadian v. United Tax Def. LLC*, No. EP-23-CV-00349-KC, 2024 U.S. Dist. LEXIS 6572, at \*2-3 (W.D. Tex. Jan. 12, 2024) (same).

Significantly, even the Texas decisions cited by Defendant do not hold that a cellular telephone can never qualify as a residential telephone. Instead, those cases turned on pleading deficiencies—specifically, the plaintiffs' failure to allege facts showing that their cellular telephones were used for personal, residential, or household purposes. Thus, the disagreement among the Texas cases has not been whether a cellphone may constitute a residential telephone, but whether the plaintiff adequately pleaded residential use. That distinction is dispositive here because Plaintiff expressly alleges that he uses his cellular telephone for personal, residential, and household purposes, pays the bills associated with the number himself, receives no business

17

reimbursement, and does not maintain a separate residential landline. ECF No. 6 ¶¶ 38-41. Accordingly, the reasoning of *Horton*, *Hunsinger*, *Hirsch*, *Powers*, *Duron*, and *Guadian* supports denial of Defendant's motion.

Indeed, Congress enacted the TCPA because "people felt almost helpless in the face of repeated and unwanted telemarketing calls." *Krakauer*, 925 F.3d at 663 (citing S. Rep. No. 102-178, at 1-2 (1991)). To solve this problem, "Congress responded with an Act that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages." *Id.* Accordingly, when interpreting the TCPA, the Court must remember it exists to protect consumers from unwanted telemarketing. *Id.* at 650, 654. *See also Suriano v. French Riviera Health Spa, Inc.,* No. 18-9141, 2018 U.S. Dist. LEXIS 216018, at *6 (E.D. La. Dec. 20, 2018) (also citing S. Rep. 102-178, at 5 (1991)).) That requires the Court to avoid overanalyzing the statute to defeat its purpose: "It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Krakauer,* 925 F.3d at 663.

In this context, courts recognized cellphones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). Indeed, cellphones are with most of us at all times – at the dinner table, at school, at work and in our bedrooms. Rejecting the Defendant's narrow reading of "residential telephone subscriber" serves the privacy rights the TCPA seeks to protect. In an environment where consumer privacy is eroding, it would be deeply concerning for a court to invalidate the TCPA's privacy protections based on a rigid and narrow reading of the term "residential subscriber," especially considering consumers have presumed for

18

more than two decades that they are protected from the unwanted harassment of telemarketers by including their number on the DNCR, cellphone or not.

Defendant therefore asks this Court to adopt a rule that no federal court in Texas has adopted and that every recent court to consider the issue has rejected.

### II.      The Plaintiff sufficiently alleges his cellular telephone is a residential line.

Defendant's next argument largely ignores the allegations of the First Amended Complaint. Plaintiff does not merely allege that Defendant sent text messages to a cellular telephone. Rather, Plaintiff specifically alleges that his cellular telephone is used for "personal, residential, and household purposes" and is not used primarily for business purposes. Am. Compl. ¶ 38. Plaintiff further alleges that his telephone number has been registered on the National Do Not Call Registry since March 2019. *Id.* ¶ 37. These allegations are neither conclusory nor formulaic; they directly address the factual question raised by Defendant's motion regarding whether Plaintiff's cellular telephone qualifies as a residential telephone for purposes of the TCPA's Do Not Call provisions.

Nothing else is required from the Plaintiff's pleading. *See Long v. Cat Exteriors*, No. SA-22-CV-00923-JKP, 2022 WL 17744052, at *4 (W.D. Tex. Dec. 15, 2022) ("[the plaintiff] alleges her cellphone number was on the national Do-Not-Call list; she asked telemarketers . . . multiple times to stop calling her cellphone and to place her on its internal Do-Not-Call list, and; the Defendants continued to call her cellphone. . . . [the plaintiff] plead sufficient facts to state a plausible claim for relief under the TCPA"); *Bilek v. Fed. Ins. Co.,* No. 21 C 1651, 2022 U.S. Dist. LEXIS 170246, *4 (N.D. Ill. Sept. 12, 2022) (plaintiff alleged her "'cell phone number is her sole phone number, which is tied to a personal, non-business account.'…That is sufficient at the pleading stage to establish that the phone on which Ms. Bilek received the calls was a 'residential'

19

phone."); *Gill v. Align Tech. Inc.,* No. 21-CV-631-JPS 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wis. May 16, 2022) ("At this stage, Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use."); and *Cunningham v. Foresters Fin. Servs.*, 300 F. Supp. 3d 1004, 1018 (N.D. Ind. 2018) (same).[3] As a result, the Plaintiff states a claim under the TCPA.

## CONCLUSION

Defendant's motion rests on a legal premise that the text of the TCPA does not support, the FCC has rejected for more than two decades, and the overwhelming weight of recent authority—including decisions from Texas federal courts—has declined to adopt. Plaintiff has also expressly alleged that his cellular telephone is used for personal, residential, and household purposes, which is all that is required at the pleading stage. Because the First Amended Complaint plausibly states claims under both the TCPA and the Texas Telephone Solicitation Act, Defendant's Motion to Dismiss should be denied in its entirety.

---

[3]   *See also Escano v. RCI LLC*, No. CV 22-360 DHU/GJF, 2022 WL 17251273, at *16 (D.N.M. Nov. 28, 2022) ("the Complaint alleges facts that plausibly suggest Plaintiff's cell phone qualifies as 'residential' under the applicable statutes"), *report and recommendation adopted,* No. 222CV00360DHUGJF, 2023 WL 34525 (D.N.M. Jan. 4, 2023); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021) ("Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion."), *adhered to on denial of reconsideration*, 541 F. Supp. 3d 138 (D. Mass. 2021);

Dated: July 26, 2026

PLAINTIFF,
By his attorney


*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
**Attorney for Plaintiff**

21