**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| RADLEY JEROME BRADFORD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TMII ENTERPRISES, LLC D/B/A A1 GARAGE DOOR DOCTOR<br><br>Defendant. | No. 4:26-cv-2839 |

**[PROPOSED] STIPULATED PROTOCOL FOR PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION**

The parties in the above-captioned action shall abide by the following protocol for the production of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. Subject to any protective order entered in this action, this Protocol governs all document productions in this matter. Its purpose is to facilitate the just, speedy, and inexpensive completion of discovery and, whenever possible, the early resolution of disputes concerning ESI without Court intervention. As used in this Protocol, the term "Party" refers to both Plaintiff Radley Jerome Bradford and TMII Enterprises, LLC dba A1 Garage Door Doctor (collectively, the "Parties").

Nothing in this Protocol limits a Party's right to seek or object to discovery under the Federal Rules of Civil Procedure or any applicable order, or to object to the authenticity or admissibility of any document or ESI produced under this Protocol. If the Parties encounter an issue concerning the disclosure of ESI under this Protocol, including a substantial delay in

producing ESI, they shall meet and confer in good faith and may amend the Protocol by agreement or seek appropriate relief from the Court.

## A. DEFINITIONS

"ESI" means computer-generated information or data of any kind stored in any medium from which information may be obtained directly or, if necessary, after translation by the Producing Party into a reasonably usable form.

"Document Family" means a group of related documents that includes parent and child documents.

"Duplicate ESI" means files that are exact duplicates based on MD5 or SHA-1 hash values. For emails with attachments, the hash value shall be generated based on the parent-child grouping, and messages shall be considered duplicates only when the parent document and all attachments are exact duplicates. Attachments shall not be eliminated as duplicates unless the parent email and all attachments are also duplicates.

"Native Format" means the format of ESI in the application in which it was originally created.

"OCR" means optical-character-recognition technology used to read paper documents or electronic images and produce searchable text.

"PDF" means Portable Document Format.

"Producing Party" means a party that produces documents in this action.

"Receiving Party" means a party to whom documents are produced in this action.

"Searchable PDF" means a PDF file containing electronically searchable text, whether derived from the original electronic document, text extraction, or OCR.

## B. GENERAL PROVISIONS

### 1. Form of Production

Except as otherwise provided below, documents and ESI shall be produced as Searchable PDF files. Each document shall be produced as a separate PDF file and shall retain its original document boundaries. Distinct documents shall not be combined into a single PDF, and a single document shall not be divided into multiple PDFs. Emails and their attachments shall be produced as separate documents, with the attachments immediately following the parent email. The relationship between an email and its attachments shall be reasonably apparent from the order of production, the filenames, an index, or another reasonably usable method.

### 2. Documents Produced in Native Format

The following materials shall be produced in Native Format when conversion to PDF would materially impair their usefulness or omit relevant information:

a. Spreadsheets, including Excel and CSV files;

b. Audio and video files;

c. Call recordings and voicemail recordings;

d. Structured data exported from a CRM, dialing platform, telephony platform, call-management system, lead-management system, text-messaging platform, or other database;

e. Documents containing formulas, hidden columns, hidden rows, multiple worksheets, tracked changes, comments, or other information that cannot reasonably be displayed in a PDF; and

f. Any other document that cannot reasonably be reviewed or understood in PDF format.

A document produced in Native Format shall retain its original file extension. If a Receiving Party believes that a specifically identified document produced as a PDF cannot reasonably be reviewed or used in that format, the Receiving Party may request production of that document in Native Format. The Parties shall meet and confer in good faith concerning the request.

**3. Bates Stamping**

The Producing Party shall assign a unique Bates number to each page of every document produced as a PDF. Files produced in Native Format shall be assigned a single Bates number corresponding to the accompanying placeholder PDF. The native file shall be named using that Bates number and its original file extension. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file, and files produced in PDF format will be stamped with the appropriate confidentiality designations in accordance with any protective order entered in this matter.

**4. Privilege and Work Product Claims**

For documents redacted or withheld from production on the basis of the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, the Producing Party shall provide a privilege log in an electronically searchable format (e.g., Excel) containing sufficient information to enable the Receiving Party to assess the claim of privilege or protection. Communications may be identified on a privilege log by category, rather than individually, if appropriate. Communications exclusively between a Party and its litigation counsel (including all attorneys, staff or other personnel) that post-date the filing of this action need not be included on a privilege log.

**5. <u>Redactions</u>**

A Producing Party may redact information protected by the attorney-client privilege, work-product doctrine, another applicable privilege or protection, an applicable protective order, or governing law. The basis for each redaction shall be clearly identified on the face of the document.

A Producing Party may also redact personal or confidential information of nonparties that is unrelated to the claims or defenses in this action, provided that the redaction does not remove information necessary to understand the document or determine whether it is responsive. When information is redacted from a document produced in Native Format, the Producing Party may produce a reasonably usable redacted copy in PDF, Excel, CSV, or another appropriate format.

**6. <u>Inadvertent Production</u>**

Pursuant to Fed. R. Evid. 502(d) and (e), the production of privileged or work-product protected documents, electronically stored information ("ESI") or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding if, after learning of such disclosure, the Producing Party promptly gives notice either in writing, or later confirmed in writing, to the Receiving Party that such information was inadvertently produced and requests that the Receiving Party return or destroy the original data. Absent a challenge under this paragraph or during the pendency of any such challenge, or contemplated challenge, the Receiving Party shall return all such material, including copies, to the Producing Party promptly upon receipt of the written notice and request for return. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness and/or segregation of privileged information before production.

**7. Email Threading**

In producing emails, the Producing Party will employ email threading to eliminate earlier or incomplete chains of emails and need only produce the most complete iteration of an email chain. As used in this Protocol, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Any de-duplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.

**8. Avoidance of Duplicate Production**

The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). De-duplication shall not break apart families and shall be performed at a family level. Where ESI is de-duplicated across custodians, the Producing Party shall preserve or otherwise identify each custodian from whose files a duplicate copy was removed.

**9. Search Terms and Other Search Methodologies**

Where a Producing Party uses search terms to identify potentially responsive ESI, the Parties shall meet and confer in good faith regarding the custodians, data sources, date ranges, and search terms to be used. The Producing Party shall disclose the custodians and reasonably accessible data sources against which the agreed search terms will be applied and shall provide

sufficient information concerning the proposed search methodology to permit the Receiving Party to evaluate whether the search is reasonably calculated to identify responsive ESI.

The Parties will meet and confer and use best efforts to agree on data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), in which case the Parties will not be obligated to preserve, collect, search, review, or produce ESI from these sources.

The Parties shall cooperate in developing reasonable search terms and other terms reasonably calculated to locate responsive information. Upon reasonable request, the Producing Party shall provide hit counts for proposed search terms before finalizing the searches. The Parties shall meet and confer concerning terms that generate an unusually large number of results or appear unlikely to identify responsive information.

Agreement upon an initial set of search terms shall not preclude either Party from proposing additional or modified search terms based upon information learned through document productions, written discovery, depositions, third-party discovery, or otherwise during discovery so long as such proposal is reasonable, proportional, aimed at reasonably accessible data, and made within a reasonable time before the close of fact discovery, as defined by the Case Management Order in this action. If subsequently produced documents or other discovery identify additional persons, vendors, terminology, campaigns, platforms, telephone numbers, email addresses, systems, projects, or other information reasonably suggesting that additional searches may identify responsive ESI, the Receiving Party may propose reasonable supplemental searches. The Producing Party shall not refuse a reasonable supplemental search solely because the search term, custodian, or data source was not included in the Parties' initial search protocol.

Search terms are a discovery tool and shall not operate as a limitation on a Producing Party's obligation to conduct a reasonable search for responsive documents. A Producing Party shall not withhold otherwise known responsive documents merely because those documents were not identified through the agreed search terms.

Nothing in this paragraph requires a Producing Party to conduct a search that is duplicative, disproportionate to the needs of the case, or technically infeasible. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI. If the Parties disagree regarding a proposed search, custodian, data source, or supplemental search, they shall meet and confer in good faith before seeking relief from the Court.

**10. Modification**

This Protocol may be modified by a stipulated order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: October 30 , 2026

**PARONICH LAW P.C.**

By: */s/ Anthony Paronich (with permission)*

**ANTHONY PARONICH**
*anthony@paronichlaw.com*
350 Lincoln Street Ste. 2400
Hingham, MA 02043
Phone: 617-485-0018

**PAUL HASTINGS LLP**

By: */s/ Michelle Reed*

**MICHELLE REED**
*michellereed@paulhastings.com*
2001 Ross Avenue
Suite 2700
Dallas, TX 75201
(972) 936-7500 (main)
(972) 936-7501 (facsimile)

**STEPHANIE BALITZER** (admitted pro hac vice)
California State Bar No. 316133
*stephaniebalitzer@paulhastings.com*
**JENI GRIFFIN** (admitted pro hac vice)
California State Bar No. 359758
*jenigriffin@paulhastings.com*
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendant
TMII ENTERPRISES, LLC D/B/A A1 GARAGE DOOR DOCTOR

IT IS ORDERED that the foregoing Agreement is approved.

Dated:

Honorable Alfred H. Bennett